IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WESLEY BROWN,

       **Plaintiff,**

vs.                                                                          No.  00cv0271 MV/JHG

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter is before the Court on Plaintiff's (Brown's) Motion to Reverse or Remand Administrative Decision, filed August 15, 2000, and fully briefed November 7, 2000.  The Commissioner of Social Security issued a final decision denying Brown's application for a disability insurance benefits and supplemental security income.  The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is well taken and recommends that it be GRANTED.

      Brown, now forty-nine years old, filed his application for disability insurance benefits and supplemental security income on February 18, 1997, alleging disability since November 15, 1996, due to coronary artery disease, sickle cell trait, cardiomyopathy, hypertension and degenerative joint disease.  On June 16, 1998, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Brown did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1.

The ALJ specifically reviewed sections 1.01, 4.04, 7.05 of the Listings and found Brown's condition was not severe enough to be deemed presumptively disabled. The ALJ further found Brown retained the residual functional capacity(RFC) for light work.[1] Brown filed a Request for Review of the decision by the Appeals Council. On January 6, 2000, the Appeals Council denied Brown's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Brown seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Brown makes the following arguments: (1) the ALJ failed to apply the correct legal standards at step three in determining he did not meet or equal any of the listings; and (2) the ALJ erred in finding he could perform substantial gainful activity based on an improper assessment that the impairments did not meet or equal any listings.

Brown claims the ALJ failed to discuss the evidence or his reasons for determining that he was not disabled at step three, contrary to *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)(summary conclusion that claimant's impairments did not meet or equal any Listing Impairment is beyond meaningful judicial review, requiring remand).

After specifically reviewing sections 1.01, 4.04 and 7.05 of the Listings, the ALJ found Brown had not had any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments. Tr. 19. The ALJ found Brown's

condition fell short of the severity necessary to be deemed presumptively disabled. As to Listing 1.01, the ALJ found Brown's "degenerative joint disease did not exhibit any of the characteristics as detailed in any section of the musculoskeletal impairments. *Id.* The ALJ also found Brown's heart impairment had no documented laboratory results listed in section 4.04c and had not resulted in marked limitation of physical activity. *Id.* Finally, the ALJ found Brown's sickle cell trait was stable, and he had not had a thrombotic crisis; had not required extended hospitalization, and had not suffered chronic, severe anemia. *Id.*

While "[t]he record must demonstrate that the ALJ considered all of the evidence, . . . an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. In this case, the ALJ adequately listed the evidence he relied upon to conclude Brown's degenerative joint disease did not meet the 1.01 Listing requirements. In addition, his determination that Brown's degenerative joint disease did not meet the 1.01 Listing requirements is supported by substantial evidence. The record indicates Brown complained of musculoskeletal aches and pains and was referred for a consultative examination to determine if he suffered from arthritis. Tr. 81. He reported taking Tylenol to relieve the pain. *Id.* On March 26, 1997, Dr. G. T. Davis performed a consultative examination and found no significant objective findings of arthritis. Tr. 151-53. On September 3, 1997, Brown went to Dr. Fotieo, Brown's primary care physician, with complaints of joint pain. Brown specifically complained of left wrist pain and swelling along with intermittent knee pain, elbow pain, and foot pain. Tr. 217. Dr. Fotieo ordered x-rays of the left wrist to rule out arthritic changes and ordered blood work to rule out rheumatoid arthritis. *Id.* On September 7, 1997, x-rays of Brown's left wrist indicated no evidence of significant

4

arthropathy.[2]  Tr. 174.  The lab work was also negative for arthritis.  Tr. 275.  The ALJ specifically discussed all this evidence at step three.

Brown also contends he meets Listing 7.05B because he has been hospitalized three times during the past 12 months.  Listing 7.05B states:

**7.05  Sickle cell disease, or one of its variants:**

**B.  Requiring extended hospitalization (beyond emergency care) at least**

**three times during the 12 months prior to adjudication;**

The evidence indicates Brown was hospitalized at least three times.  However, the hospitalizations were not due to his sickle cell disease.  There must be a nexus between the hospitalizations and a claimant's sickle cell disease in order for Listing 7.05B to apply.  This is not the case here.  Accordingly, the ALJ's determination that Brown did not meet Listing 7l05B is supported by substantial evidence.

However, the ALJ's determination that Brown's heart impairment was not so severe so as to be deemed presumptively disabled falls short of what is required by *Clifton*.  In his June 16, 1998 decision, the ALJ stated, "His heart impairment has no documented laboratory results listed in section 4.04C, and has not resulted in marked limitation of physical activity."  Tr. 19.  Because the ALJ gives no indication of his step three analysis and reasoning, the Court is unable to review his finding that Brown did not meet or equal Listing 4.04C.  The Court will remand to the ALJ for specific findings at step three of the sequential analysis as to the applicability of the criteria set forth in Listings 4.04B & C and to set out the evidence considered or rejected.  Additionally, the

---

[2] Arthropathy is any disease affecting a joint. *Stedman's Medical Dictionary* 150 (26th ed. 1995).

ALJ shall call a medical expert (cardiologist) to review the file and determine whether Brown meets Listing 4.04B or C.

The ALJ also found Brown's heart impairment had not resulted in marked limitation of physical activity. At the administrative hearing Brown testified he did not do anything but sit and rest because of his chest pain. Tr. 328. Brown also testified that when he worked or did anything he had chest pain. Tr. 343. Brown further testified the chest pain was waking him up every night and, although he took nitroglycerin pills for his chest pain, he continued to experience chest pain. Tr. 344. Brown testified he took nitroglycerin pills at least every other day to control his pain. He testified the pain occurred when he walked and felt like a burning feeling inside of him. He testified that when he had chest pain he had difficulty breathing and had to sit down and rest. He also testified he tried not to take the nitroglycerin pill every day even though he experienced chest pain even while sitting. Tr. 346-48. Although Brown attempted to work part-time, the evidence indicates his hours were severely reduced due to his chest pain, fatigue and his shortness of breath. Dr. Fotieo advised Brown not to work at all until his medical condition could be evaluated. Tr. 235. Dr. Fotieo's recommendation was due to Brown's recurrent chest pain, dizziness and because he had been hospitalized at least two times for chest pain and shortness of breath. *Id.* On remand, the ALJ should reevaluate his finding that Brown's heart impairment had not resulted in marked limitation of physical activity, giving his reasoning and analysis.

## **RECOMMENDED DISPOSITION**

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. Brown's Motion to Reverse or Remand Administrative decision, filed November 7, 2000, should be granted. This case should be remanded to the Commissioner to

allow the ALJ to make specific findings at step three of the sequential analysis as to the applicability of the criteria set forth in Listings 4.04B & C and to set out the evidence considered or rejected. Additionally, the ALJ shall call a medical expert (cardiologist) to review the file and determine whether Brown meets Listing 4.04B or C. Finally, the ALJ should reevaluate his finding that Brown's heart impairment had not resulted in marked limitation of physical activity, giving his reasoning and analysis.

JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.